IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ICHARTS LLC, | § | |
| | § | |
| Plaintiff/Counter Defendant, | § | |
| | § | |
| v. | § | 1:23-CV-1225-DII |
| | § | |
| TABLEAU SOFTWARE, LLC, | § | |
| | § | |
| Defendant/Counter Plaintiff. | § | |

## ORDER

Before the Court is Defendant Tableau Software, LLC's ("Tableau") motion to transfer venue to the Northern District of California. (Dkt. 29). Plaintiff iCharts LLC ("iCharts") filed a response, (Dkt. 45), and Tableau filed a reply, (Dkt. 53). Also before the Court are the following related motions, which are opposed and fully briefed: iCharts's motion for venue discovery, (Dkt. 31); Tableau's motion for leave to file sur-reply on the motion for venue discovery, (Dkt. 39); Tableau's motion to stay discovery and pretrial proceedings pending resolution of the motion to transfer, (Dkt. 44); and iCharts's motion to strike portions of Tableau's reply in support of its motion to transfer, (Dkt. 56). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion to transfer should be granted.

## I. BACKGROUND

iCharts filed its complaint on October 10, 2023, in the Austin Division of the Western District of Texas ("WDTX"). (Compl., Dkt. 1). iCharts alleges that Tableau's products infringe three patents: U.S. Patent Nos. 8,271,892; 8,520,000; and 9,712,595 ("the Asserted Patents"). Specifically, iCharts claims that Tableau products infringe the Asserted Patents by incorporating modules that (1) "store data" and "chart templates," (2) enable "select[ing]" data and templates to "create an interactive chart" on an interface, and (3) "publish" or "transmit interactive charts to other

websites" where the chart "can be seen" and "modified" "without using the user interface on the first website." (*Id.* at 18–25). The complaint lists a series of "accused products" but the infringement allegations refer only to Tableau Cloud, Tableau Desktop, Tableau Server, and Tableau Data Management. (*See id.* 4–5, 18–25). iCharts alleges that the accused functionality was added to Tableau products at the beginning of 2010. (*Id.* at 10). On December 22, 2023, Tableau filed an answer and counterclaims, seeking declaratory judgments that it has not infringed the Asserted Patents and that the Asserted Patents are invalid. (Dkt. 18).

Plaintiff iCharts LLC is the successor entity of iCharts, Inc. ("ICI"). ICI was founded in 2008 as a data visualization company. (Compl., Dkt. 1, at 5). The primary founder of ICI, Seymour Duncker, established ICI's headquarters in Sunnyvale, California, and ICI resided in northern California for its entire existence. (Tyz Decl., Dkt. 29-1, ¶¶ 10, 20). iCharts asserts that ICI and Tableau were competitors and that in 2017, the parties discussed a potential acquisition of ICI by Tableau, during which ICI made Tableau aware of ICI's patent portfolio, including the Asserted Patents. (Compl., Dkt. 1, ¶¶ 29, 32). However, in 2018, ICI filed for Chapter 7 bankruptcy in the Northern District of California ("NDCA"). (Ex. 4, Dkt. 29-5). Eventually the Asserted Patents were assigned to Plaintiff iCharts LLC in September 2021. (Tyz Decl., Dkt. 29-1, ¶¶ 30–31). iCharts is a Delaware corporation that is headquartered in Arizona. (*Id.* ¶ 31; Compl., Dkt. 1, ¶ 2). In its complaint, iCharts does not allege any presence, office, nor employees in Texas. However, iCharts alleges that one of ICI's primary business partners, NetSuite, is based in Austin. (Resp. Mot. Transfer, Dkt. 45, at 3).

Defendant Tableau is also a data visualization company. It was founded in 2003 in Mountain View, California, growing out of the work of a Stanford University student Chris Stolte, professor Pat Hanrahan, and alumnus Christian Chabot. (Mot. Transfer, Dkt. 29, at 2). Stolte's Ph.D. prototype grew into Tableau Desktop, which launched in 2005. (*Id.*). Tableau filed over 200 patents

on various innovations, the earliest of which were filed in 2004–2008 and were related to systems and methods of generating charts from data. (*Id.*). Over time, Tableau's headquarters moved to Seattle, Washington, but Tableau states that it has always maintained engineers in both NDCA and Seattle. (*Id.*). It asserts that both locations hosted the engineers who from 2005 through 2013 developed the core of Tableau functionality on the Tableau Desktop, Tableau Server, Tableau Public, and Tableau Online/Cloud products. (*Id.* at 2–3). Tableau states that 70% of the Tableau engineering team is now based in the San Francisco Bay Area and Seattle locations. (*Id.* at 3). It also states that the most knowledgeable employees on the development and design of Tableau products work in or near NDCA. (*Id.*). In 2019, San Francisco-based company Salesforce acquired Tableau. While Tableau maintains multiple offices in Seattle, it states that its operations have largely migrated to Salesforce in San Francisco. (*Id.*). Tableau also maintains an office in Austin, Texas. (*Id.*).

On January 19, 2024, Tableau filed an opposed motion to transfer, arguing that this Court should transfer the case to NDCA. (Mot. Transfer, Dkt. 29). Tableau argues that NDCA is a clearly more convenient forum for this case because (1) Tableau's engineers that developed the accused functionality are in or near NDCA; (2) Tableau's employees with relevant information on the marketing, sales, and finances of the accused products, and its parent company Salesforce, are in NDCA; (3) numerous prior art witnesses are in NDCA; and (4) various witnesses and evidence associated with ICI and the Asserted Patents are in NDCA. (*Id.* at 1).

In response to the motion to transfer, iCharts filed a motion requesting leave to conduct venue discovery before having to respond to the motion to transfer. (Mot. Venue Disc., Dkt. 31). iCharts asserts that venue discovery is necessary because Tableau's motion to transfer overstates its connection to Northern California and understates its presence in Seattle and Austin. (*See id.* at 1–2). iCharts requests leave to serve discovery requests with the intent to flesh out if Tableau's evidence and witnesses are located in the San Francisco Bay area, the Seattle area, or the Austin area. (*Id.* at 2).

Tableau filed a response in opposition, arguing that venue discovery is not necessary because the proposed discovery would not change the analysis of the motion for transfer. (Resp. Mot. Venue Disc., Dkt. 34, at 1). Tableau asserts that its motion to transfer presents sufficient evidence that all of its relevant witnesses and evidence are either in NDCA or in locations that are closer to NDCA than WDTX. (*Id.*).

iCharts then filed a reply in support of its motion for venue discovery, in which it alleges that Tableau has made misrepresentations in its motion to transfer. (Reply Mot. Venue Disc., Dkt. 36, at 1). iCharts alleges that Tableau does not have a current Palo Alto office and argues that this is contrary to statements that Tableau and its witnesses have made in its motion to transfer and its supporting affidavits. (*Id.* (citing Jewett Decl., Dkt. 29-22, ¶ 10)). In response to iCharts's reply, Tableau filed a motion for leave to file a sur-reply that addressed this accusation. (Mot. Leave, Dkt. 39). In the proposed sur-reply, Tableau asserts that it has a current presence in Palo Alto, including an office lease that has been assigned to Salesforce as well as Tableau employees, including approximately 65 engineers, that are assigned to work at Salesforce offices in the area. (Proposed Sur-Reply, Dkt. 39-1, at 1). In support of these statements, Tableau attached a declaration from George Yu ("Yu"), senior counsel for Salesforce. (Yu Decl., Dkt. 39-2). iCharts opposes Tableau's motion for leave to file a sur-reply, arguing that it is unjustified. (Resp. Mot. Leave, Dkt. 40).

On March 22, 2024, iCharts filed its substantive response to Tableau's motion for transfer. (Resp. Mot. Transfer, Dkt. 45).[1] It argues that transfer is not warranted because Tableau is headquartered in Seattle and has no regular place of business in NDCA, repeating many of its allegations that Tableau has misrepresented the extent of its presence in Northern California. (*Id.* at 1–2). iCharts also argues that transfer is not warranted because relevant documents and witnesses are

---

[1] On this date, Tableau also filed a motion to stay discovery and pretrial proceedings in this case while the motion for transfer remained pending. (Dkt. 44). iCharts opposed this motion as well. (Dkt. 49).

in WDTX and Tableau has overstated the relevant evidence and witnesses that are in NDCA. (*See id.* at 8–17).

Tableau next filed its reply in support of its motion for transfer, in which it argued primarily that venue is proper in NDCA because it has a regular place of business in the district. (Reply Mot. Transfer, Dkt. 53, at 1). Tableau again attached a declaration from Yu in support of this argument because Tableau's sur-reply to the motion for venue discovery, to which Yu's declaration was also attached, had not yet been admitted by the Court. (*See* Yu Decl., Dkt. 53–5). In response, iCharts filed a motion requesting that the Court strike portions of Yu's declaration. (Mot. Strike, Dkt. 56). iCharts argues that Yu's declaration, and any arguments relying on it, should be struck as improper and prejudicial because they were "raised for the first time" in a reply brief. (*Id.* at 1). Tableau filed a response opposing the motion to strike. (Dkt. 57).

## II. MOTION FOR LEAVE TO FILE SUR-REPLY AND MOTION TO STRIKE

At the outset, the Court briefly addresses two procedural issues that have bearing on the evidence that the Court will consider in its discussion of the motion to transfer: Tableau's motion for leave to file a sur-reply in relation to the motion for venue discovery, (Dkt. 39), and iCharts's motion to strike Yu's declaration from Tableau's reply in support of its motion to transfer, (Dkt. 56).

First, Tableau requests permission to file a sur-reply in response to iCharts's accusation that Tableau misrepresented its presence in Northern California—an accusation first presented in iCharts's reply in support of its motion for venue discovery, (*see* Reply Mot. Venue Disc., Dkt. 36, at 1). (Mot. Leave, Dkt. 39). The Court finds that the interests of justice favor granting Tableau leave to file its sur-reply in response to iCharts's serious allegation. The Court will thus grant Tableau's motion for leave to file the sur-reply, which includes the Yu declaration, (Dkt. 39-2), and other accompanying exhibits, (Dkts. 39-3 and 39-4). These filings are now properly before the Court.

Second, iCharts moves to strike certain portions of Tableau's reply in support of its motion for transfer, including specific paragraphs of the Yu declaration attached to the reply, exhibits attached to the Yu declaration, and arguments in the reply brief that rely upon that evidence. (Mot. Strike, Dkt. 56, at 1). iCharts contends that the evidence and arguments based on them are improper and prejudicial because they are raised for the first time on reply and could have been raised in Tableau's original motion to transfer. (*Id.*).

The Court disagrees. Parties are permitted to submit evidence and arguments in a reply brief "to rebut a new argument raised by the opposing party in a response." *C&M Oilfield Rentals, LLC v. Location Illuminator Techs., LLC*, No. 18-CV-00039, 2020 WL 4708714, at *2 (W.D. Tex. July 13, 2020). In its motion to transfer, Tableau argues from the outset that venue is proper in NDCA because it has offices in NDCA. (*See* Mot. Transfer, Dkt. 29, at 8). In its reply brief, it expanded upon that argument and provided more detail as to the number of offices and the number of employees it has in the district. (*See* Reply Mot. Transfer, Dkt. 53, at 1–4). Tableau did so because iCharts questioned whether Tableau had been truthful in asserting a regular business presence in the San Francisco Bay area. (*See* Resp. Mot. Transfer, Dkt. 45, at 1–7). Tableau's submission of the Yu declaration and related arguments are thus proper rebuttals to iCharts's response. Further, iCharts is not prejudiced by the Yu declaration. iCharts had notice of the Yu Declaration for a month before its response to the transfer motion was due because Tableau attached the same declaration to its motion for leave to file a sur-reply. (*Compare* Dkts. 39-2 and 53-5). Even though the Yu Declaration had not been properly admitted into evidence yet, iCharts mentioned it repeatedly in its response to the transfer motion, seeming to understand that Tableau would again seek to admit it. (*See* Resp. Mot. Transfer, Dkt. 45, at 2, 6–7). Therefore, the Court will deny iCharts's motion to strike. Tableau's reply brief and the Yu Declaration are properly before the Court.

### III. MOTION FOR VENUE DISCOVERY

Next, the Court briefly addresses iCharts's motion for venue discovery. (Dkt. 31). A district court has "broad discretion in all discovery matters," and "such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Kelly v. Syria Shell Petroleum Dev.*, 213 F.3d 841, 855 (5th Cir. 2000). "As the party opposing [transfer] and requesting discovery, the plaintiffs bear the burden of demonstrating the necessity of discovery." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) (quoting *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013)). "A district court is within its discretion to deny [venue] discovery when there is no indication of fraud or misconduct in the defendant's affidavits, and there is no reason to believe that additional information would alter the outcome." *Optic153 LLC v. Thorlabs Inc.*, No. 6:19-CV-00667-ADA, 2020 WL 3403076, at *4 (W.D. Tex. June 19, 2020).

iCharts requests venue discovery because it alleges that Tableau made "vague and misleading" statements in its motion to transfer that conflated Tableau's presence in NDCA and Seattle such that it is overstating its presence in NDCA. (Mot. Venue Disc., Dkt. 31, at 2). iCharts seeks discovery to unearth whether Tableau's evidence and witnesses are in the Seattle area, the San Francisco Bay area, or the Austin area. (*Id.*). Tableau filed a response in opposition, arguing that venue discovery is unnecessary because it would not change the outcome of the motion to transfer. (Resp. Mot. Venue Disc., Dkt. 34, at 1).

The Court finds that iCharts has not carried its burden in seeking venue discovery. As explained in detail below, Tableau has provided sufficient evidence to persuade the Court that it has relevant evidence and witnesses in the San Francisco Bay area and little relevant evidence in WDTX. To the extent that Tableau has material evidence and witnesses in Seattle, venue discovery would not change the Court's transfer analysis because Seattle is a great deal closer to NDCA than it is to WDTX. The Court also finds that there is no indication of fraud or misrepresentations in Tableau's

briefs and affidavits such that venue discovery is needed to check the veracity of Tableau's statements. The parties' briefing on the motion to transfer was sufficient for this Court to decide which forum is clearly more convenient in this case. Because the Court is not persuaded that discovery would affect the Court's venue analysis, the Court denies iCharts's motion for leave to seek venue discovery. *See USTA Tech., LLC v. Google LLC*, No. W-22-CA-01214-XR, 2023 WL 4054597, at *2 (W.D. Tex. June 16, 2023) (denying motion for venue discovery where there is no indication of misconduct in the defendant's affidavits and no reason to believe that additional information would alter the outcome).

## IV. MOTION TO TRANSFER

### A. Legal Standard

The Court now turns to the merits of the motion to transfer. Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As such, "[t]he threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If so, the Court turns to consideration of "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847, at 370 (1986)).

The relevant factors include matters of both private and public interest. *Volkswagen I*, 371 F.3d at 203; *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private-interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance;

and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict-of-law problems involving the application of foreign law. *Id.* No single factor is dispositive. *Id.*

The Court must also "give some weight to the plaintiffs' choice of forum." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 n.6 (2013). However, the plaintiff's venue choice "is neither conclusive nor determinative. *In Re Horseshoe Entertainment*, 337 F. 3d 429, 434 (5th Cir. 2003). Rather, the party seeking transfer must show "good cause": a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *Humble Oil & Refining Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). Thus, when the transferee venue is "not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). But when the movant demonstrates that the transferee venue is clearly more convenient, "it has shown good cause and the district court should therefore grant the transfer." *Id.*

## B. Whether the Case Could Have Been Brought in NDCA

"The preliminary question under 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. In other words, a movant must show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit. *XR Commc'ns, LLC v. Google LLC*, No. 6:21-CV-00625-ADA, 2022 WL 3702271, at *2 (W.D. Tex. Aug. 26, 2022). The burden of proof is on the party seeking transfer. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013–14 (Fed. Cir. 2018). In patent cases, venue is appropriate "in the judicial district where

the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

Here, it is undisputed that Tableau does not reside in NDCA because it is a Delaware corporation.[2] Therefore, venue is appropriate under § 1400(b) only if Tableau has a "regular and established places of business" in NDCA. A "regular and established place of business" has three requirements: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

First, Tableau must establish that it has a "physical place in the district." *Id.* To satisfy the "physical place" requirement, the location must be "a physical, geographical location in the district from which the business of the defendant is carried out." *Id.* at 1362. The physical place need not be "real property that the defendant must own[] or lease" so long as business can physically be carried out at that location. *In re Google LLC*, 949 F.3d 1338, 1343 (Fed. Cir. 2020) (internal quotation marks omitted). Tableau argues that it meets this requirement because it has multiple physical places in NDCA, "including offices that were historically Tableau offices and consolidated with Salesforce operations, and Salesforce offices where Tableau employees regularly work." (Sur-Reply Mot. Venue Disc., Dkt. 39-1, at 3).

Specifically, Tableau points to a lease on a building located at 260 California Avenue in Palo Alto. This lease began in 2015 and runs until 2025. After Tableau was acquired by Salesforce, the lease was assigned to Salesforce. (*See* Yu Decl., Dkt. 53-5, ¶ 5; Lease Docs., Dkts. 53-6 and 53-7). iCharts, however, argues that the 260 California Avenue office cannot be considered as Tableau's physical place because iCharts presents evidence suggesting that this office has been vacant since

---

[2] For purposes of § 1400(b), Tableau resides in Delaware because it is incorporated in that state. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 262 (2017).

2020 and is currently available for sublease. (*See* Santoni Decl., Dkt. 45-1, ¶¶ 2–9). The Court agrees with iCharts. Tableau may have historically used this property to conduct business, but Tableau has not presented evidence suggesting that it is still used as a regular place of business. Thus, while the 260 California Avenue property is a physical property that Tableau continues to lease, Tableau cannot use that location to establish that it has a regular and established place of business in NDCA.

However, Tableau points to at least two other properties that do satisfy the *Cray* requirements.[3] Tableau explains that since Salesforce acquired it, Tableau and Salesforce have consolidated their office space in Palo Alto. (Yu Decl., Dkt. 53-5, ¶ 6). One hundred and sixteen Tableau employees have been assigned to work at a building leased by Salesforce at 180 University Avenue in Palo Alto. (*Id.* ¶¶ 6, 22). One hundred and thirty-three Tableau employees have also been assigned to work at offices within Salesforce Tower in San Francisco. (*Id.* ¶¶ 9, 22). These two buildings are physical places in NDCA where Tableau's business is carried out; therefore, they satisfy the first *Cray* requirement.

Second, Tableau meets the second *Cray* requirement—that the 180 University Avenue and Salesforce Tower properties are "regular and established place[s] of business." *Cray*, 871 F.3d at 1360. A physical place is "regular" under *Cray* if it "operates in a steady, uniform, orderly, and methodical manner." *Id.* at 1362–63 (internal quotation marks omitted). A place is established if it is steady for "a meaningful time period." *Id.* And a "place of business" is one that has the "regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged place of business." *See In re Google LLC*, 949 F.3d at 1345. The 180 University Avenue and Salesforce Tower properties easily meet these requirements. Hundreds of Tableau

---

[3] Tableau also points to a third property in Palo Alto where Salesforce holds a lease, 181 Lytton Avenue, that it says satisfies the *Cray* requirements. (*See* Sur-Reply Mot. Venue Disc., Dkt. 39-1, at 3–4; *see also* Yu Decl., Dkt. 53-5, ¶ 7). Because Tableau fails to explain if this property is currently in use or if Tableau employees work there, the Court does not consider it in its analysis.

employees are assigned to work at these two locations and work regularly there, with badges providing them access to the facilities. (Yu Decl., Dkt. 53-5, ¶¶ 6, 9). In addition, 53 of Tableau's remote employees freely access office space at these Palo Alto and San Francisco facilities on a regular basis. (*Id.* ¶¶ 8, 9, 22). Last, Tableau's executive team, including its CEO, COO, CMO, and CRO, work in offices at Salesforce Tower. (*Id.* ¶ 20). In total, Tableau estimates that 300 Tableau employees work in NDCA. (Reply Mot. Transfer, Dkt. 53, at 2). The second *Cray* requirement is satisfied.

Third, the 180 University Avenue and Salesforce Tower properties are "places[s] of the defendant." *Cray*, 871 F.3d at 1360. Relevant considerations of this factor include whether the defendant "owns or leases the place," "exercises other attributes of possession or control over the place," or "condition[s] employment on an employee's continued residence in the district." *Id.* at 1363. iCharts argues that Tableau has not sufficiently established that Tableau exercises possession or control over these locations because they are owned or leased by Salesforce. (Resp. Mot. Transfer, Dkt. 45, at 5–7). The Court disagrees. Tableau has provided evidence that approximately 250 Tableau employees are assigned to work at these two offices and, by company policy, are "expected to come in regularly." (Yu Decl., Dkt. 53-5, ¶¶ 22, 24; *see also* Ex. B, Dkt. 53-9). These employees have badges that give them access to the facilities, and another 50 remote employees are freely given access to these offices on a regular basis by request. (*Id.* ¶¶ 6, 8–9, 22). These actions demonstrate that Tableau sufficiently controls those locations. *See TrackThings LLC v. Amazon.com Servs. LLC*, No. 6:23-CV-00133, 2023 WL 7930080, at *3 (W.D. Tex. Nov. 16, 2023) (holding that the third *Cray* factor was met as to eero LLC where eero's remote workers regularly had access to Amazon's Tech Hub offices in Austin). Even though Salesforce leases or owns these properties, the

Court is satisfied that Tableau exercises control over these offices and conditions employment on employees' continued residence in the district.[4] Therefore, the third *Cray* requirement is satisfied.

In sum, Tableau has established that it has a regular and established place of business in NDCA. Hundreds of Tableau employees, including many of Tableau's executive officers, work at two physical offices in NDCA. Though Salesforce leases or owns these offices, Tableau exercises control over these places and Tableau business is regularly conducted there.[5] Accordingly, Tableau has carried its burden in proving that this case could have been brought in NDCA. The preliminary question is satisfied, and the Court proceeds to determine if venue in NDCA is clearly more convenient than venue in WDTX.

### C.  Private Interest Factors

The Court next turns to the private interest factors relevant to the § 1404(a) analysis. The private-interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203. The Court will address each in turn.

#### 1. Relative Ease of Access to Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *WAG Acquisition, L.L.C. v. Google*

---

[4] iCharts cites *Zilkr Cloud Technologies, LLC v. RingCentral, Inc.*, No. 3:21-CV-2807-S, 2022 WL 1102863 (N.D. Tex. Apr. 12, 2022), arguing that the case demonstrates how Tableau employees' use of Salesforce offices does not establish that those offices are "places of" Tableau. (*See* Resp. Mot. Transfer, Dkt. 45, at 7). However, *Zilkr* dealt with a party that was trying to establish that remote employees' home offices constituted a regular and established place of business of their employer. *See Zilkr*, 2022 WL 1102863, at *3. The remote employees in that case are clearly distinguishable from the Tableau employees who work at the Salesforce offices in this case.

[5] Tableau provides evidence that Salesforce is also the leaseholder of Tableau's Austin office. (Yu Decl., Dkt. 53-5, ¶ 10). Therefore, if this Court were to accept iCharts's argument that a Salesforce-leased building cannot provide support for venue in NDCA, it would also have to find that venue is improper in WDTX.

*LLC*, No. W-21-CV-00816-ADA, 2022 WL 9569437, at *3 (W.D. Tex. Oct. 5, 2022). The "location

of document custodians and location where documents are created and maintained" must also be

considered, as those "bear on the ease of retrieval." *Id.* at *4 (quoting *In re Google*, No. 2021-178,

2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021)). A court will also "look to the location where the

allegedly infringing products were researched, designed, developed, and tested." *XY, LLC v. Trans*

*Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017)

(citing *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). In "patent infringement cases, the

bulk of the relevant evidence usually comes from the accused infringer." *In re Nintendo*, 589 F.3d

1194, 1199 (Fed. Cir. 2009) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

"Consequently, the place where the defendant's documents are kept weighs in favor of transfer to

that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d at

1345).

Tableau argues that this factor favors transfer for a few reasons. First, it asserts that evidence

related to the accused products is located in or near NDCA. Tableau provides declarations from

Tableau employees indicating that records related to the operations, marketing, finances, and sales of

the accused products are made and kept in San Francisco, due to the consolidation of those

functions at Salesforce. (Nguyen Decl., Dkt. 29-23, ¶¶ 5, 6). Tableau also alleges that Tableau's

records of the development and operation of the accused products were historically kept on servers

in Seattle or in Microsoft SharePoint systems that were administered from Seattle; however, since

the Salesforce acquisition, the Tableau servers and documents have also migrated to Salesforce.

(Jewett Decl., Dkt. 29-22, ¶ 19–21). Tableau states that the most knowledgeable persons about

Tableau's software and software repository server, which contains historical copies of source code

for the accused products, are in Seattle and Palo Alto. (*Id.* ¶¶ 5, 16; Nguyen Decl., Dkt. 29-23, ¶ 9).

As for Tableau's public-facing website, which has historically housed and maintained Tableau's user

documentation, that is maintained by a team led by an employee in San Francisco. (Nguyen Decl., Dkt. 29-23, ¶ 11; Jewett Decl., Dkt. 29-22, ¶ 22). Last, Tableau's employees attest that former employee computers are physically held by Salesforce in San Francisco. Relevant to this litigation, Tableau states that Salesforce is currently holding a computer of a former senior Tableau employee who worked for over thirteen years on Tableau product management before his departure. (Nguyen Decl., Dkt. 29-23, ¶ 10).

In its response, iCharts argues that these pieces of evidence related to the accused products do not support transfer to NDCA. iCharts contends that "the vast majority, if not all, of Tableau's documents reside on servers accessible from anywhere, including Tableau's Austin office . . . ." (Resp. Mot. Transfer, Dkt. 45, at 8). However, the fact that evidence is electronic does not mean that access is uniform in each district. *See WAG Acquisition, L.L.C.*, 2022 WL 9569437, at *4 (citing *In re Apple Inc.*, 2022 WL 1196768, at * 4 (Fed. Cir. Apr. 22, 2022)); *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) ("[E]lectronic storage of documents . . . does not make the sources-of-proof factor irrelevant."). As this Court has previously stated, "the Federal Circuit has held that it is an error not to also consider 'the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval.'" *WAG Acquisition*, 2022 WL 9569437, at *4 (quoting *In re Google*, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021)). Tableau correctly contends that access would be more readily available in NDCA because most of the employees with knowledge of the relevant records are located in NDCA or in Seattle, which is closer to NDCA than WDTX. (Reply Mot. Transfer, Dkt. 53, at 5–6). In contrast, the employees in Tableau's Austin office would have less familiarity and less access to relevant evidence because they are mostly salespeople who joined Tableau after the accused products were developed. (*Id.*). Tableau's evidence shows that access to Tableau's relevant sources of proof is far easier in NDCA than in WDTX and outweighs iCharts's speculation that Tableau's Austin employees would have

15

equal access to these sources of proof. *See In re TikTok*, 85 F.4th 352, 359 (5th Cir. 2023) (holding it was abuse of discretion to rely on speculation that Austin employees possessed or had access to relevant proof when it was "relatively easier to access . . . source code in [NDCA]—where a majority of the engineering team is based").

Second, Tableau asserts that records related to the development, prosecution, and commercialization of the Asserted Patents are in NDCA. Tableau alleges that lead inventor and former ICI CEO Seymour Duncker resides in NDCA and the source code embodying the Asserted Patents and his records of ICI and Tableau's business discussions are in NDCA. (Mot. Transfer, Dkt. 29, at 10). iCharts does not dispute that Duncker resides in NDCA but instead argues that these documents are not all physically located in NDCA and instead are "stored in the cloud and accessible from anywhere." (Resp. Mot. Transfer, Dkt. 45, at 10). As stated above, access to sources of proof is not easier in WDTX just because the information is stored electronically. Because Duncker resides in NDCA and has implicitly admitted that at least some relevant documents are located there, access to his documents is still relatively easier in NDCA than in WDTX. *See TikTok*, 85 F.4th at 359 (directing transfer to NDCA in part because it was easier to access source code in NDCA than have someone with access located out-of-district bring it to WDTX). iCharts also contends that documents related to Duncker's business discussions with Tableau are duplicative of records that Tableau already has. (*See* Duncker Decl., Dkt. 45-28, ¶ 5). A declaration from one of Tableau's employees confirms that Tableau has at least one document related to the ICI–Tableau talks on its servers. (*See* Nguyen Decl., Dkt. 29-23, ¶ 12). It is unclear whether Tableau also has access to other documents related to business discussions with ICI. Regardless of which documents Tableau has access to, access to these records is relatively easier in NDCA because that is where both Duncker and the relevant Tableau employees are located. *See In re Google LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023) (weighing location of inventors in favor of transfer).

Third, Tableau asserts that the prosecution files for the Asserted Patents are relevant to this case and located in NDCA. (Mot. Transfer, Dkt. 29, at 10). Tableau alleges that the files of the attorneys who prosecuted the Asserted Patents and who aided in the transfer of the patents to iCharts are located in San Francisco. (Tyz Decl., Dkt. 29-1, ¶¶ 25–31). In its response, iCharts contends that the patent prosecution records are not relevant to this case because this evidence is rarely relevant or discoverable absent inequitable conduct allegations. (Resp. Mot. Transfer, Dkt. 45, at 10–11). The Court disagrees with iCharts. The Federal Circuit has indicated that district courts commit error in their transfer analysis when they "categorically giv[e] no wight to [parties'] patent prosecution witnesses." *In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *4 (Fed. Cir. Jan. 19, 2022); *see also In re Acer*, 626 F.3d at 1256 (directing transfer to NDCA where a "significant portion of the evidence" was located, including "records of the prosecuting patent attorneys). Neither of these cases suggested that prosecution evidence is only relevant in cases with inequitable conduct allegations. Accordingly, the Court considers this evidence in its analysis and finds that transfer to NDCA would provide easier access to this information. *In re Google LLC*, 58 F.4th at 1385 (weighing location of prosecuting attorneys in favor of transfer).

Fourth, Tableau argues that evidence related to ICI's bankruptcy is in NDCA because the bankruptcy proceedings took place in the district and the trustee still resides there. (Tyz Decl., Dkt. 29-1, ¶¶ 20–24). iCharts again argues that this evidence is irrelevant to the current case. (Resp. Mot. Transfer, Dkt. 45, at 11). Again, iCharts's argument is unavailing. The Court credits Tableau's argument that the trustee's records may be relevant not only to valuation of the Asserted Patents— which would be relevant to damages—but also to Tableau's standing and estoppel defenses. *See, e.g.*, *Keystone Autonics, Inc. v. Sirius Satellite Radio Inc.*, No. 2:07-CV-00061, 2008 WL 11347992, at *1 (E.D. Tex. Sept. 23, 2008) (compelling bankruptcy documents in patent case as relevant to standing and estoppel); *Perrie v. Perrie*, 727 F. App'x 673, 675 (Fed. Cir. 2018) (affirming dismissal of patent

ownership claim prior to bankruptcy for lack of standing). Because Tableau provides evidence that the bankruptcy records are in NDCA, transfer would support access to these records as well.

In contrast, the only sources of proof that iCharts argues are exclusively in WDTX are records related to ICI's former strategic partner NetSuite, who is based in Austin. iCharts explains that ICI offered its services nearly exclusively through the NetSuite platform and thus NetSuite documents demonstrate ICI sales. iCharts argues that NetSuite's records are relevant to damages and demonstrating the commercial success of the Asserted Patents. (Resp. Mot. Transfer, Dkt. 45, at 8). The Court credits iCharts's argument that these records may be relevant to damages because of the importance of the ICI and NetSuite partnership.

On balance, however, the Court finds that the vast majority of the relevant evidence is in NDCA. Tableau's records of the development, operation, and sales of the accused products are located in NDCA, and the custodians of those records are located in NDCA or in Seattle, which is closer to NDCA than WDTX. The Court weighs the ease of access to this evidence most heavily because the "bulk of the relevant evidence" in patent infringement cases "usually comes from the accused infringer." *See In re Nintendo*, 589 F.3d at 1199. The Court also credits the fact that records related to the Asserted Patents are in NDCA, such as the lead inventor's records, the prosecution files, and documents related to the bankruptcy proceeding involving those patents. While some evidence related to the commercialization of the Asserted Patents is in WDTX, most of the relevant sources of proof are in NDCA. Accordingly, the Court finds that the first private factor leans strongly in favor of transfer.

### 2. Availability of Compulsory Process to Secure Attendance

This factor focuses on "non-party witnesses whose attendance may need to be secured by a court order." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019) (citing *Volkswagen II*, 545 F.3d at 316). "When there is no indication that a non-party

witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018). A court may subpoena a witness to attend trial only (1) "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or (2) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii).

Tableau argues that this factor also weighs in favor of transfer. It alleges that at least ten potentially relevant third-party witnesses—who have relevant information on the development, commercialization, prosecution, and value of the Asserted Patents because they have a connection to ICI—are subject to compulsory process in NDCA. (Mot. Transfer, Dkt. 29, at 11–13). These potential witnesses include (1) Seymour Duncker, the lead inventor of the Asserted Patents and the co-founder and former CEO of ICI; (2) Valerie Duncker, a marketing, operations, and finance manager at ICI who participated in the ICI bankruptcy process and whose company served as an intermediary in the assignment of the Asserted Patents to iCharts; (3) Rajesh Setty, a co-founder of ICI; (4) Kevin Adams, Andrey Yruski, Britt Cyester, and Rico Andrade, four former ICI vice presidents; (5) Alex Nie and Jacek Wnuk, the attorneys who prosecuted the Asserted Patents; and (6) Fred Hjelmeset, the ICI bankruptcy trustee. (*Id.*). Tableau also alleges that there are at least five corporations in NDCA that could serve as prior art witnesses. (*Id.* at 13–14).

iCharts contends that this factor weighs against transfer. iCharts alleges that there are important third-party witnesses in Texas with information concerning damages, the commercial success of the inventions in the Asserted Patents, and the value of Tableau products. (Resp. Mot. Transfer, Dkt. 45, at 11). Those allegedly relevant witnesses include (1) five former ICI customers

who are in Texas; (2) Mr. Bukary, an executive from former ICI partner NetSuite; and (3) four "key" Tableau customers who reside in WDTX. (*Id.* at 11–12).

Both parties challenge each other's potential witness list. iCharts argues that (1) Seymour and Valerie Duncker are willing witnesses that cannot be considered under this factor; (2) many of the ICI witnesses Tableau identified have information that is duplicative of information that Seymour Duncker can provide; (3) the prosecuting attorneys and the bankruptcy trustee should not be considered because their testimony would not be relevant to this case; and (4) the prior art witnesses should not be given weight in this analysis because Tableau has not sufficiently identified the relevance of the alleged prior art and "prior art witnesses are very unlikely to testify at trial." (*Id.* at 12–13). For its part, Tableau contends that many of the customers that iCharts identified in Texas should not be considered because there are customers in NDCA as well. (Reply. Mot. Transfer, Dkt. 53, at 8).

"Requiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary." *In re Genentech, Inc.,* 566 F.3d at 1343 (citing *Volkswagen II*, 545 F.3d at 317 n.12). The Court finds that Tableau has identified twelve potential non-party witnesses that are subject to NDCA's compulsory process. The Court will not consider Seymour and Valerie Duncker under this factor because of iCharts's representations that they are willing witnesses. As for the rest of the witnesses that Tableau identified, the Court will consider all but Rico Andrade in its analysis. Tableau has sufficiently argued that Rajesh Setty has relevant and material information because he co-founded ICI before the Asserted Patents' applications were filed, was at the company for nine years, and was involved in pitching the beta for ICI's products. (*See* Mot. Transfer, Dkt. 29, at 12; Reply. Mot. Transfer, Dkt. 53, at 8). Tableau has also demonstrated that former ICI executives Kevin Adams, Andrey Yruski, and Britt Cyester may be important witnesses because each had a different

role at ICI and were involved in key engineering, technology, and sales roles. (Mot. Transfer, Dkt. 29, at 12). Their testimony is not necessarily duplicative of Mr. Duncker's because unlike Duncker, their testimony will not be colored by a personal stake in this case's outcome. (Reply, Mot. Transfer, Dkt. 53, at 8). However, Tableau has not adequately alleged why Rico Andrade would be relevant in this case, given that he was ICI's former VP of marketing and mostly had a communications role. (*See* Mot., Transfer, Dkt. 29, at 12; Resp. Mot. Transfer, Dkt. 45, at 13). The Court also finds that Tableau has explained why the non-party companies may have prior art that is relevant to the Asserted Patents due to their connection with data visualization. (*See* Mot. Transfer, Dkt. 29, at 13–14). Last, the Court finds that the prosecuting attorneys and the bankruptcy trustee could be relevant witnesses in this case for the same reasons as stated above in the Court's analysis of ease of access to the prosecution and bankruptcy files.

In contrast, iCharts has identified ten potential non-party witnesses that are subject to WDTX's compulsory process. The Court finds that iCharts has adequately argued why Mr. Bukary may be a relevant witness due to the importance of the ICI and NetSuite partnership. However, iCharts has not sufficiently alleged why the five ICI Texas customers and the four Tableau Texas customers have particular relevance in this case. During its partnership with NetSuite, ICI "amassed a couple hundred customers around the United States." (Duncker Decl., Dkt. 45-28, ¶ 7). Tableau is also a nationwide company that has customers across the country. iCharts has not explained why the nine Texas customers that iCharts identified would have information that a customer in another state or NDCA would not have. And even if these Texas customers had unique information, it seems unlikely that all five of the ICI customers and all four of Tableau witnesses would need to testify given that they would likely have duplicative information.[6] Therefore, the Court gives little

---

[6] As one example, iCharts identifies Vishwa Patel and Shwetalee Raut as Tableau customers who would have information relevant to Tableau's products. (Resp. Mot. Transfer, Dkt. 45, at 12). Both Patel and Raut work

weight to these witnesses. *See AudioEye, Inc. v. accessiBe Ltd.*, No. 6:20-CV-997-ADA, 2022 WL 827805, *4 (W.D. Tex. Mar. 9, 2022) (according "little to no weight" to location of plaintiff's "customers and partners" on a motion to transfer from Texas to New York where plaintiff had not shown that plaintiff's Texas customers had evidence a New York customer would not have). Accordingly, the Court only strongly considers one WDTX non-party witness. Because Tableau has identified many more potentially relevant non-party witnesses subject to compulsory process in WDTX, this factor strongly favors transfer.

### 3. Cost of Attendance

The cost of attendance focuses on willing witnesses, and the factor considers both party and non-party witnesses. *Vargas v. Seamar Divers Int'l, LLC*, No. 2:10-CV-178-TJW, 2011 WL 1980001, at *7 (E.D. Tex. May 20, 2011) (citing *Volkswagen I*, 371 F.3d at 204). This factor is often considered the most important factor to be considered in deciding whether to transfer venue. *Moss v. Lockheed Martin Corp.*, No. 3:10-CV-1659-M, 2011 WL 197624, at *5 (N.D. Tex. Jan. 18, 2011) (citing *AT&T Intellectual Prop. I L.P. v. Airbiquity Inc.*, No. 3:08–CV–1637–M, 2009 WL 774350, at *5 (N.D. Tex. Mar. 24, 2009)). The Fifth Circuit employs a "100-mile rule" which states that when "the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. The Federal Circuit has stated that courts should not apply the rule rigidly if they will have to travel a significant distance regardless of the venues at stake. *In re Apple*, 979 F.3d at 1342.

Tableau argues that this factor weighs strongly in favor of transfer to NDCA. In its motion, as well as in its attached employee declarations, Tableau alleges that its "longest-tenured engineers"

---

for the same employer, Charles Schwab. (Richey Decl., Dkt. 45-6, ¶ 6). The Court is highly skeptical that these witnesses would have different testimony regarding Tableau's use at their workplace.

with "knowledge of Tableau's relevant products are concentrated in NDCA," or nearby in Oregon and Washington. (Mot. Transfer, Dkt. 29, at 15; *see also* Jewett Decl., Dkt. 29-22, ¶ 16). Similarly, Tableau's most knowledgeable witnesses regarding the finance, sales, and marketing of the accused products are with Salesforce in NDCA. (*Id.*; *see also* Nguyen Decl., Dkt. 29-23, ¶ 7). Custodians regarding Tableau documents are in NDCA or Seattle. (*Id.*; *see also* Nguyen Decl., Dkt. 29-23, ¶¶ 9, 11). In contrast, Tableau alleges, "None of the remaining engineers in the Austin office developed the accused functionality" and any information they may have "will be less comprehensive and merely duplicative" of the most knowledgeable witnesses, who are all located on the West Coast. (*Id.* at 16; *see also* Jewett Decl., Dkt. 29-22, ¶¶ 4–8, 15–16).

On the other hand, iCharts argues that the witness convenience factor disfavors transfer for a few reasons. First, it states that a co-inventor of the Asserted Patents, Tyron Montgomery, resides in Germany. Thus, WDTX would be a closer and more convenient forum for him to travel to. (Resp. Mot. Transfer, Dkt. 45, at 14). Next, iCharts argues that there are willing witnesses on the East Coast for whom WDTX would be a more convenient forum. iCharts identifies three former ICI customers as having relevant information concerning damages. (*Id.*). Last, iCharts alleges that there are many Tableau employees who work in Austin who would have knowledge relevant in this case. It identifies eight Tableau employees who it believes, based on a search of these employees' LinkedIn profiles, could be witnesses in this case. (*Id.* at 14–16).

The Court finds that this factor weighs heavily toward transfer. As patent cases usually focus on the activities of the alleged infringer, Tableau's contention that its NDCA or West Coast employees are far more knowledgeable about the accused products and have access to more relevant information is especially weighty. iCharts's identification of seemingly random employees in Tableau's Austin office and speculation as to what knowledge they have does not overcome the representations that Tableau has made regarding which employees will be most knowledgeable and

most relevant in this case. It is true that Tableau has employees in Austin, but the record indicates

that none of Tableau's Austin employees "had any involvement in the research, design, or

development of the accused technology." *See In re Apple Inc.,* No. 2022-137, 2022 WL 1676400, at *2

(Fed. Cir. May 26, 2022). Even if some Tableau employees must travel from Washington to testify at

the trial, it will be far more convenient for them to travel to NDCA than to travel to WDTX.

Another consideration that weighs heavily in the Court's determination is the fact that two

important ICI witnesses reside in NDCA: Seymour Duncker, the lead inventor and primary founder

of ICI, and Valerie Duncker, who worked at ICI and was involved in the bankruptcy proceedings.

Both have indicated that they would be willing witnesses in this case and are likely important

witnesses in this case. (*See* Duncker Decl., Dkt. 45-28, ¶¶ 1, 6f).

In contrast, the Court does not give much weight to the witnesses iCharts identified as being

closer to WDTX. As for co-inventor Tyron Montgomery who resides in Germany, it is true that

WDTX is closer to Germany than NDCA. However, Montgomery "will be traveling a great distance

no matter which venue the case is tried in and will be only slightly more inconvenienced by the case

being tried in California than in Texas." *In re Genentech, Inc.,* 566 F.3d at 1345 (affirming transfer from

the Eastern District of Texas to NDCA where the majority of witnesses were in NDCA or San

Diego even though one party was based in Germany and closer to Texas). As for the three East

Coast witnesses that iCharts identified as relevant under this factor, the Court again finds that

iCharts has failed to sufficiently argue what is unique about these customers such that their specific

testimony is required in this case compared to customers in other parts of the country.[7] If anything,

iCharts seems to concede that these East Coast customers would be knowledgeable about the same

types of information as other customers. (*See* Duncker Decl., Dkt. 45-28, ¶ 9 (stating that the East

---

[7] The Court notes that under this factor, iCharts has again identified obviously duplicative witnesses. Two of
the three East Coast witnesses identified work at the same company, Coca-Cola Company based in Atlanta,
Georgia. (*See* Duncker Decl., Dkt. 45-28, ¶¶ 9a, 9b).

Coast customers "would also be knowledgeable about the same types of information as the group of customers in Texas.")). Given that the vast majority of relevant witnesses in this case reside in NDCA or on the West Coast, and very few, if any, willing witnesses reside in WDTX, this factor strongly favors transfer.

### 4. Other Practical Problems

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. Tableau argues that this factor favors transfer because this case is in its early stages, lead trial counsel for both parties are in NDCA, and NDCA is the only district with any "institutional knowledge" about the Asserted Patents because it handled ICI's bankruptcy proceeding. (Mot. Transfer, Dkt. 29, at 16–17). Meanwhile, iCharts contends that this factor is neutral, disputing the relevance of the bankruptcy proceeding to this case and arguing that transfer is not warranted simply because a case is in its early stages. (Resp. Mot. Transfer, Dkt. 45, at 17).

Previously, this Court has considered delays in requesting transfer or related litigation in the transferee or transferor court when analyzing this factor. *See, e.g., Umbra Techs. Ltd. v. VMware, Inc.*, No. 1:23-CV-904-DII, 2024 WL 1123592, at *5 (W.D. Tex. Mar. 13, 2024). This case is in its early stages, but Tableau has not argued why this fact alone would make trial in this case easier, more expeditious, and less expensive in NDCA than in WDTX. Neither party has alleged that there is related pending litigation that would affect the ease or expense of trying this case in one court or another. Nor does the Court find that the prior bankruptcy proceeding in NDCA would alleviate any practical problems in this case. While on a broad level, it is true that NDCA is the only district that has resolved a case involving the Asserted Patents, this case would proceed in a district court that is unlikely to be familiar with the bankruptcy proceedings. The Court does, however, credit

Tableau's argument that the location of lead counsel in NDCA could make proceedings in that district more convenient. Therefore, this factor marginally favors transfer.

### D. Public Interest Factors

The Court next turns to the public interest factors relevant to the § 1404(a) analysis. The public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict-of-law problems involving the application of foreign law. *Volkswagen I*, 371 F.3d at 203. The Court will address each in turn.

1. Administrative Difficulties Flowing from Court Congestion

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). The relevant inquiry under this factor is the "speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343 (citations omitted). This factor is "the most speculative" and is given little weight compared to the other transfer factors. *XR Commc'ns*, 2022 WL 3702271, at *9 (citing *In re Genentech*, 566 F.3d at 1347). The Federal Circuit recently "noted that 'the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics.'" *In re Apple Inc.,* No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021) (quoting *In re Juniper Network*s, 14 F.4th at 1322).

Both parties, however, claim that this factor favors their position, citing different statistics of the average time to trial in each district. (*See* Mot. Transfer, Dkt. 29, at 17; Resp. Mot. Transfer, Dkt. 17–18). Tableau also argues that at the very least this factor is neutral because Plaintiff is a non-practicing entity, not engaged in product competition. (Mot. Transfer, Dkt. 29, at 17–18). Indeed, the undersigned has a particularly busy civil caseload, with over 900 pending civil cases. However, it also appears undisputed that iCharts, unlike its predecessor, is "not engaged in product competition

in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference." *In re Google LLC*, 58 F.4th at 1383. Overall, the Court finds that this factor is neutral.

### 2. Local Interest

Under this factor, courts evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 315. The factor focuses on the "significant connections between a particular venue and the events that gave rise to a suit." *In re Google*, 2021 WL 4427899, at *5 (internal citations omitted). Accordingly, this factor recognizes a local interest where the accused products or patented products were designed and developed, and where persons reside whose "work and reputation" the lawsuit "calls into question." *See In re Apple Inc.*, 979 F.3d at 1345; *In re Samsung Elecs. Co., Ltd.*, No. 2023-146, 2023 WL 8642711, at *2 (Fed. Cir. Dec. 14, 2023) (finding that this factor weighed in favor of transfer when "accused functionality was in part researched, designed, and developed in NDCA" as was the patented technology).

Tableau argues that NDCA has a far greater local interest in this case than WDTX because Tableau's products were designed and developed in NDCA, and multiple persons whose "work and reputation" are at issue reside there. (Mot. Transfer, Dkt. 29, at 18). Tableau grew out of a collaboration between a Stanford University student, professor, and alumnus, and key engineers involved in the development of the accused functionality worked out of Tableau's NDCA offices. (*Id.*). Today, although Tableau is headquartered in Seattle, Tableau employs approximately 300 employees in NDCA and has a large presence in the area because it has been acquired by Salesforce, which is based in San Francisco. (*Id.*; *see also* Reply Mot. Transfer, Dkt. 53, at 2). Further, the Asserted Patents were also developed and commercialized in NDCA because iCharts's predecessor ICI was based there. (*Id.* at 19).

iCharts meanwhile argues that WDTX has a greater local interest in the case because of Tableau's Austin office. (Resp. Mot. Transfer, Dkt. 45, at 18). iCharts alleges that Tableau's Austin office has over 150 employees and works with vendors in Austin that "service its facility and employees." It also mentions that Tableau does "extensive business in Austin, including sales of accused products, and files Texas state tax returns." (*Id.*). iCharts next disputes Tableau's representations about Tableau's connections to NDCA. It states that because Tableau and its founders moved its headquarters to Seattle twenty years ago, Tableau no longer has a significant connection to NDCA. Last, iCharts disputes ICI's connections to NDCA. It alleges that the Asserted Patents were conceived outside the US, not in NDCA. It also alleges that the commercialization of ICI products largely took place through ICI's partnership with Austin-based NetSuite, another reason that WDTX would have a greater local interest in this case. (*Id.* at 19–20).

The Court finds that this factor weighs in favor of transfer. The Federal Circuit has held that with respect to the local interest factor, "a party's 'general presence in a particular district' does not alone 'give that district a special interest in the case.'" *See In re Apple*, 2022 WL 1196768, at *3; *see also USTA Tech., LLC v. Google LLC*, 2023 WL 4833481, at *6 (W.D. Tex. July 26, 2023) (same). Although Tableau has a general presence in WDTX and iCharts has some connection to Austin due to NetSuite, the focus must be on a particular venue and the events that gave rise to a suit. *See In re Google*, 2021 WL 4427899, at *5. It was not ICI's sale of products through partnership with NetSuite that gave rise to this suit but rather Tableau's creation of an allegedly infringing functionality, which partly took place in NDCA and not at all in WDTX. Tableau's general presence in Austin did not give rise to this suit as Tableau's Austin office did not exist until after the accused products were developed. The fact that the Austin office may now sell the accused products is afforded "no weight." *USTA Tech.*, 2023 WL 4833481, at *6 (quoting *In re Apple*, 979 F.3d at 1345); *see also In re Acer*, 626 F.3d at 1256 ("[S]ale of an accused product offered nationwide does not give rise to a

substantial interest in any single venue."). The Court also credits Tableau's arguments that NDCA's "local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). Overall, this factor weighs heavily in favor of transfer.

### 3. Familiarity with the Law and Conflict of Laws

Under the last two public interest factors, courts analyze the forum's familiarity with the governing law, and the avoidance of unnecessary conflict-of-law problems involving the application of foreign law. *Volkswagen I*, 371 F.3d at 203. Tableau contends that these factors support transfer because of a May 2020 agreement that may be relevant to the Asserted Patents' valuation and in determining damages in this action. (Mot. Transfer, Dkt. 29, at 20). It contends that questions of California law may arise in interpreting this agreement because California law governs the agreement. (*Id.*). Meanwhile, iCharts argues that these factors are neutral. It argues that Tableau has not established why the 2020 agreement would be relevant to this case. Even if the agreement were relevant, iCharts argues that it is not clear that issues of California law would arise in construing the agreement. (Resp. Mot. Transfer, Dkt. 45, at 20).

The Court agrees with iCharts. Tableau has not provided a sufficient justification for why the 2020 agreement will be relevant later in these proceedings. To the extent that a court will need to construe the agreement at a later date, Tableau has not identified what specific issues of California law may arise such that a California district court would be more knowledgeable than this Court. Therefore, the Court finds that the last two public interest factors are neutral.

### E. Conclusion

For the reasons discussed above, the factors clearly weigh in favor of transfer. Five factors— the ease of access to proof, availability of compulsory process, cost of attendance, miscellaneous

practical problems, and local interests—all weigh strongly in favor of transfer. Three factors—court congestion, familiarity of law, and conflict of law—are neutral. None weigh in favor of keeping venue in the Western District of Texas. Therefore, because venue is clearly more convenient in the Northern District of California, the Court will grant Tableau's motion to transfer.

## V. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Tableau's motion for leave to file sur-reply on the motion for venue discovery, (Dkt. 39), is **GRANTED**. The Clerk of the Court shall file Tableau's sur-reply, (Dkt. 39-1), and accompanying exhibits, (Dkts. 39-2 through 39-4).

**IT IS FURTHER ORDERED** that iCharts's motion to strike, (Dkt. 56), is **DENIED**.

**IT IS FURTHER ORDERED** that iCharts's motion for venue discovery, (Dkt. 31), is **DENIED**.

**IT IS FURTHER ORDERED** that Tableau's motion to transfer, (Dkt. 29), is **GRANTED**.

**IT IS FURTHER ORDERED** that iCharts's motion for extension of time, (Dkt. 32), and Tableau's motion to stay discovery and pretrial proceedings, (Dkt. 44), are **MOOT**.

**IT IS FINALLY ORDERED** that this case is **TRANSFERRED** to the Northern District of California.

**SIGNED** on May 21, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE